UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)

**MICHAEL GATES**
c/o Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910

And

**ANTHONY COLEMAN**
c/o Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910

And

**TAMARA TRUSTY**                                       **CASE NO.:**
c/o Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910

And

**JEANETTE MARIE STRATTON**
c/o Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910

And

**DONNA CRITZER**
c/o Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910

       Plaintiffs,

  v.

**425 EAST BALTIMORE STREET, INC.**
**D/B/A CLUB HAREM**
425 East Baltimore Street
Baltimore, Maryland 21202

**SERVE:  Duane Henderson**
**4011 Parkway Avenue**
**Baltimore, Maryland 21201**

And

**DUANE HENDERSON**
**4011 Parkway Avenue**
**Baltimore, Maryland 21202**

        **Defendants.**

# COMPLAINT

1.     In this action, Plaintiffs Michael Gates ("Gates"), Anthony Coleman ("Coleman"), Tamara Trusty ("Trusty"), Jeanette Marie Stratton ("Stratton"), and Donna Critzer ("Critzer") (collectively, "Plaintiffs") seek recovery of unpaid wages and damages against Defendants 425 East Baltimore Street, Inc. d/b/a Club Harem ("Club Harem") and its primary owner and operator Duane Henderson, individually ("Henderson") (together, "Defendants"), arising from Defendants' violation of Defendants' wage payment rights under the Fair Labor Standards Act of 1938, as amended, ("FLSA"), the Maryland Wage Hour Law ("MWHL"), and the Maryland Wage Payment Collection Law ("MWPCL").

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein under 28 U.S.C. §1331, this action being brought under the FLSA, 29 U.S.C. §201, *et seq*.

3. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §1391(b) and (c) in the U.S. District Court for the District of Maryland, Baltimore Division, because a substantial part of the events or omissions giving rise to the claims occurred within Baltimore City, Maryland, and Defendants have had substantial and systematic contacts within Baltimore City, Maryland, within the relevant period.

**PARTIES**

5. Club Harem is a corporation, formed under the laws of the State of Maryland, operating at its principal place of business in Baltimore City, Maryland.

6. Henderson is an adult domiciliary and resident of Baltimore City, Maryland.

7. During the relevant period, Defendants owned and operated Club Harem, a strip club in Baltimore City, Maryland, featuring nude and semi-nude female exotic dancers performing provocative and/or erotic dances for the entertainment of Defendants' customers.

8. During the relevant period, Defendants qualified as joint employers of and for Plaintiffs relating to Plaintiffs' work duties performed for Defendants' primary benefit for, in, or at Defendants' Club Harem strip club.

9. During the period relevant to his action, Henderson, individually and through his managers, and/or agents commonly acting on behalf of Henderson and Club Harem, oversaw, directed, and otherwise controlled the terms and conditions of Plaintiffs' employment for, in, or at Defendants' Club Harem strip club.

10. During the period relevant to this action, Henderson, individually and through his managers, and/or agents commonly acting on behalf of Henderson and Club Harem, held full

authority and control to set and/or modify work duties, work responsibilities, work hours, and rate and method of compensation of and for all Plaintiffs for, in, or at Defendants' Club Harem strip club.

11. During the period relevant to this action, Henderson, individually and through his managers, and/or agents commonly acting on behalf of Henderson and Club Harem, had full power and authority to hire, fire, and/or discipline and/or alter the conditions Plaintiffs' employment at or in Defendants' Club Harem strip club.

12. During the period relevant to this action, the work duties Plaintiffs performed for Defendants' primary benefit for, at, or in Defendants' Club Harem strip club was ongoing and at-will and not *ad hoc* and/or limited to a discrete time or special assignment.

13. Gates is an adult domiciliary and resident of Washington, D.C.

14. Coleman is an adult domiciliary and resident of Howard County, Maryland.

15. Trusty is an adult domiciliary and resident of Baltimore City, Maryland.

16. Stratton is an adult domiciliary and resident of Baltimore County, Maryland.

17. Critzer is an adult domiciliary and resident of Baltimore County, Maryland.

18. By acting as the named Plaintiffs and affixing each of their names to the caption in this pleading, each Plaintiff provides the Court with his/her written consent to prosecute his/her claims against Defendants for unpaid wages and damages under the FLSA and Maryland law.

## **FACTS**

19. Gates was employed by Defendants as a manager and head of security at Defendants' Club Harem during the period of about June 2017, through about Mid-January 2023.

20. Coleman was employed by Defendants as a security guard at Defendants' Club Harem during the period of about Mid-January 2021 through about September 15, 2022.

21. Trusty was employed by Defendants as an exotic dancer and also as a bartender at Defendants' Club Harem during the period of about February 2022, through about January 2023.

22. Stratton was employed by Defendants as a bartender and/or bar manager at Defendants' Club Harem during the period of about March 2017, through about February 8, 2023.

23. Critzer was employed by Defendants as a bartender / assistant manager during the period of about January 2022, through about February 2023.

24. The period relevant to Plaintiffs' claims is the 3-year statutory recovery period, March 2020, through the present, apart from about March 2020 through about June 2020, and again from about September 2020 through Mid-January 2021, when Defendants' Club Harem was closed.

25. During the relevant period of about March 2020, through about December 2021, excluding periods Defendants' Club Harem was closed, Gates customarily worked weeks with 4 shifts per week from 12:00 PM to 2:00 AM, for a total of about 56 hours per week.

26. During the relevant period of about January 2022, through about September 2022, Gates customarily worked 5 day shifts per week from 12:00 PM until about 8:00 PM, and about 3 evening shifts per week from about 12:00 PM until about 2:00 AM, for a total of about 72 hours per week.

27. During the relevant period of about October 2022, through about Mid-January 2023, Gates customarily worked about 5 shifts per week from about 5:00 PM until about 2:00 AM, for a total of about 45 hours per week.

28. Throughout the entirety of Gates' employment, Defendants required Gates to attend a mandatory Monday meeting with Henderson for a compensable 1-hour meeting from about 10:00 AM until about 11:00 AM, for which Defendants paid Gates no wages.

29. During the period of about February 2020, through about December 2021, excluding periods Defendants' Club Harem was closed, Defendants paid Gates direct wages in the amount of $100.00 per shift. Additionally, during this period, at Defendants' requirement and direction, Gates received tips from Defendants' bartenders and dancers.

30. During the period of about January 2022, through September 2022, Defendants customarily paid Gates $100.00 per shift only for night shifts and no wages at all for day shifts. Additionally, during this period, at Defendants' requirement and direction, Gates received tips from Defendants' bartenders and dancers.

31. During the period of about Mid-January 2021, through about February 2021, Coleman customarily worked the morning shift at Defendants' Club Harem, 7 days per week from about 10:00 AM until about 8:00 PM, for a total of about 70 hours per week.

32. During the period of about March 2021, through about September 15, 2022, Coleman customarily worked 6 day shifts per week at Defendants' Club Harem, from about 11:00 AM until about 8:00 PM and about 5 evening shifts per week from about 8:00 PM until about 2:00 AM, for a total of about 80 hours per week.

33. During the period of Mr. Coleman's employment, Defendants paid Coleman $60.00 per shift. Additionally, during this period, at Defendants' requirement and direction, Coleman received tips from Defendants' bartenders and dancers.

34. During the period of about February 2022, through about September 2022, Trusty was employed by Defendants to perform as an exotic dancer in Defendants' Club Harem about 4-5 shifts per week, for about 24-30 hours per week.

35. During the period of about October 2022, through about Mid-November 2022, Trusty worked or performed as an exotic dancer at Defendants' Club Harem about 3 shifts per week, for about 18 hours per week and worked as a bartender at Defendants' Club Harem about 4 shifts per week for about 32 hours per week.  During this period, Trusty worked an average of about 50 hours per week.

36. During the period of about Mid-November 2022, through about January 2023, Trusty worked or performed as an exotic dancer for, at, or in Defendants' Club Harem about 3-4 shifts per week, for about 18-24 hours per week.

37. During Trusty's period of employment, for shifts Trusty worked as an exotic dancer, Defendants paid Trusty no wages unless Trusty sold at least 5 drinks.  If Trusty sold 5 or more drinks, Defendant paid Trusty a base wage of $80.00, plus $5.00 for each additional drink sold.  On instances Trusty worked 2 shifts in one day, Defendants paid Trusty her base wage only for the 1 of the 2 shifts.

38. During Trusty's period of employment, for shifts Trusty worked as a bartender, Defendants paid Trusty $60.00 per 8-hour shift, plus $2.00 from drinks sold by Defendants' dancers.

39. During Trusty's period of employment, Defendants deducted, kept, and/or assigned 20%-25% from Trusty's earned tips paid by customers using credit cards, far exceeding the customary credit card processing fee charge to Defendants in the amount of about 3%-5%.

40. During the relevant period Defendants' Club Harem was open to the public from about March 2020, through about February 8, 2023, Stratton worked at Defendants' Club Harem as a bartender and/or bartender manager about 5 night shifts per week, from about 7:00 PM / 7:30 PM, until between 2:00 AM / 2:30 PM, for an average of about 30-35 hours per week.

41. During the relevant period Defendants' Club Harem was open to the public from about March 2020, through about February 8, 2023, Defendants paid Stratton no wages unless Stratton met her quota of selling 20 drinks per shift.  If Stratton met her quota, Defendants paid Stratton $100.00 per shift, plus $2.00 per additional drink sold.

42. During Stratton's period of employment, Defendants deducted, kept, and/or assigned 20%-25% from Stratton's earned tips paid by customers using credit cards, far exceeding the customary credit card processing fee charge to Defendants in the amount of about 3%-5%.

43. During the period of about January 2022, through about February 9, 2023, Defendants employed Critzer to work as a bartender and then later as assistant manager at Defendants' Club Harem.

44. During the period of Ctizer's employment, Critzer customarily worked (i) Saturday day shift from about 11:00 AM – 8:00 APM; (ii) Saturday night shift from about 8:00 PM – 2:30 AM; (iii) Sunday day shift from about 11:00 AM – 8:00 PM; (iv) Sunday night shift from about 8:00 PM – 2:30 AM; (v) Monday night shift from about 8:00 PM – 2:00 AM; and (vi) Tuesday night shift from about 8:00 PM – 2:00 AM, for a total of about 72 hours per week.

45. During the period of Critzer's employment from about January 2022, through about September 2022, Defendants paid Critzer no wages unless Critzer met her quota of 10

drinks sold. If Critzer met her 10-drink quota, Defendants paid Critzer $60.00 for the shift, but Defendants typically failed and/or refused to pay Critzer for day shifts worked.

46. During Critzer's period of employment, Defendants deducted, kept, and/or assigned 20%-25% from Critzer's earned tips paid by customers using credit cards, far exceeding the customary credit card processing fee charge to Defendants in the amount of about 3%-5%.

47. At all times relevant to this action, Defendants had actual knowledge of all hours Plaintiffs worked each week, including overtime Plaintiffs worked over forty (40) hours per week.

48. During the period relevant to this action, the Federal Minimum wage was $7.25 per hour.

49. During the period relevant to this action, the Maryland Minimum Wage was as follows (a) 2020 - $11.00 per hour; (b) 2021 - $11.75 per hour; (c) 2022 - $12.50 per hour; and (d) 2023 - $13.25 per hour.

50. In many weeks of Plaintiffs' employment during the relevant period, Defendants failed to pay Plaintiffs for all non-overtime (40 and less) hours worked at a rate of pay calculating at least equal to the Federal Minimum Wage rate.

51. In many weeks of Plaintiffs' employment during the relevant period, Defendants failed to pay Plaintiffs for all non-overtime (40 and less) hours worked at a rate of pay calculating at least equal to the applicable Maryland Minimum Wage rate.

52. In many weeks of Plaintiffs' employment during the relevant period, Defendants suffered or permitted Plaintiffs to work overtime in excess of forty (40) hours per week for which Defendants failed to pay Plaintiffs at the Federally required time-and-one-half rate for all overtime worked each week.

53. In many weeks of Plaintiffs' employment during the relevant period, Defendants suffered or permitted Plaintiffs to work overtime in excess of forty (40) hours per week for which Defendants failed to pay Plaintiffs at the Maryland required time-and-one-half rate for all overtime worked each week.

54. In many weeks of Plaintiffs' employment during the relevant period, Defendants violated Federal and Maryland law by failing to fully and timely pay Plaintiffs and/or allow Plaintiffs to keep or retain all earned wages, tips, and gratuities promised and/or earned while performing employment duties for Defendants' primary benefit for, at, or in Defendants' Club Harem.

55. Prior to and/or during the period relevant to this action, Defendants were subject to one or more lawsuits and/or threatened lawsuits in which the alleged and/or threatened claim against Defendants arose from alleged FLSA and/or Maryland minimum wage and/or overtime and/or wage payment violations.

56. Arising from Defendants participation in prior FLSA and/or Maryland wage and hour and/or wage payment litigation and/or threatened litigation, during the relevant period, Defendants had actual knowledge that the method and manner by which Defendants paid Plaintiffs during the relevant period was in direct violation of the FLSA, the MWHL, and the MWPCL.

57. Defendants' conduct and violations of the FLSA, MWHL, and MWPCL, as set forth in this pleading, was willful and in bad faith, and has caused Plaintiffs to suffer significant damages.

## COUNT I
## FLSA

58.     Plaintiffs re-assert and incorporate by reference all paragraphs set forth above as if restated herein.

59.     During the relevant period, Defendants qualified Plaintiffs employer or joint employers under the FLSA.

60.     During the relevant period, Defendants violated the FLSA by failing to compensate Plaintiffs for all non-overtime hours worked during the relevant period at or above the Federal Minimum Wage rate and by failing to compensate Plaintiffs for all overtime hours worked during the relevant period at the FLSA required time-and-one-half overtime premium rate.

61.     During the relevant period, Defendants violated the FLSA by charging and deducting excessive credit card processing fees from Plaintiffs' tips and/or by keeping and/or assigning portions of Plaintiffs' earned tips or gratuities.

62.     For the entire relevant period, Plaintiffs are owed and entitled unpaid back wages (i) for non-overtime hours worked at the Federal Minimum Wage rate; (ii) for overtime hours worked at the Federally required time-and-one-half overtime premium rate; and (iii) payment and/or reimbursement of all deducted, assigned, and/or withheld excessive credit card processing fees and tip and/or gratuity deductions and/or assignments.

63.     Prior to and during the relevant period, Defendants had actual and/or constructive knowledge of the FLSA Minimum Wage and overtime wage payment requirements and Defendants' failure to abide by the same in compensating Plaintiffs was willful, knowing and intentional or, at minimum, reckless.

64. Defendants' failure to properly compensate Plaintiffs during the relevant period as required by the FLSA was not the product of good faith on the part of Defendants.

## COUNT II
## MWHL

65. Plaintiffs re-assert and incorporate by reference all paragraphs set forth above as if restated herein.

66. During the relevant period, Defendants qualified Plaintiffs employer or joint employers under the MWHL.

67. During the relevant period, Defendants violated the MWHL by employing Plaintiffs to perform compensable employment duties for Defendants within the State of Maryland and thereafter failing to compensate Plaintiffs for all non-overtime hours worked during the relevant period at or above the Maryland Minimum Wage rate and by failing to compensate Plaintiffs for all overtime hours worked during the relevant period at the MWHL required time-and-one-half overtime premium rate.

68. During the relevant period, Defendants violated the MWHL by charging and deducting excessive credit card processing fees from Plaintiffs' tips and/or by keeping and/or assigning portions of Plaintiffs' earned tips or gratuities.

69. For the entire relevant period, Plaintiffs are owed and entitled unpaid back wages (i) for non-overtime hours worked at the applicable Maryland Minimum Wage rate; (ii) for overtime hours worked at the Maryland required time-and-one-half overtime premium rate; and (iii) payment and/or reimbursement of all deducted, assigned, and/or withheld excessive credit card processing fees and tip and/or gratuity deductions and/or assignments.

70. Prior to and during the relevant period, Defendants had actual and/or constructive knowledge of the Maryland Minimum Wage and overtime wage payment requirements and

Defendants' failure to abide by the same in compensating Plaintiffs was willful, knowing and intentional or, at minimum, reckless.

71. Defendants' failure to properly compensate Plaintiffs during the relevant period as required by the MWHL was not the product of good faith on the part of Defendants.

## COUNT III
## MWPCL

72. Plaintiffs re-alleges and incorporates all previous paragraphs as if they were set forth herein.

73. During the relevant period, Defendants violated the MWPCL by employing Plaintiffs to perform compensable employment duties for Defendants within the State of Maryland and thereafter failing to fully and timely pay Plaintiffs all earned wages due and owing each pay period.

74. During the relevant period, Defendants qualified Plaintiffs' employer or joint employers under the MWPCL.

75. As a result of the above alleged practices, during the relevant period, Defendants violated the MWPCL by failing to fully and timely compensate Plaintiffs (i) all earned wages due and owing for all hours non-overtime hours worked at the Maryland Minimum Wage rate; (ii) all earned wages due and owing for all overtime hours worked at the Maryland required time-and-one-half overtime premium rate; and (iii) permitting Plaintiffs to keep and retain all earned wages, tips, and/or gratuities paid to Plaintiffs and/or for Plaintiffs' intended benefit by Defendants' customers.

76. As a result of the above alleged practices, during the relevant period, Defendants violated the MWPCL by charging and deducting unlawful and excessive credit card processing

fees and/or tip assignments against Plaintiffs resulting in unlawful deductions and/or a failure by Defendants to fully and timely pay all wages earned and due and owing for all hours worked.

77. Plaintiff are now owed and entitled under the MWPCL to unpaid and/or withheld and/or deducted earned wages equal to (i) reimbursement of all deducted and/or assigned excessive credit processing fees and/or earned tips and/or gratuities deducted and/or assigned by Defendants and (ii) payment of direct wages equal to the full Maryland Minimum Wage rate for all non-overtime hours worked and full payment of Maryland-required time-and-one-half overtime premium wages for overtime worked over forty (40) hours per week during the relevant period.

78. Prior to and during the relevant period, Defendants had actual and/or constructive knowledge of the Maryland and MWPCL wage payment requirements and Defendants' failure to abide by the same in compensating Plaintiffs was willful, knowing, and intentional or, at minimum, reckless.

79. Defendants' failure to properly full and timely compensate Plaintiffs earned wages during the relevant period as required by the Maryland law and the MWPCL was not the product of good faith on the part of Defendants or a *bona fide* dispute by or between Defendants and Plaintiffs.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs request the following relief:

a) An order finding that Defendants violated the FLSA, MWHL, and the MWPCL;

b) An order finding Defendants' violations of the FLSA, MWHL, and MWPCL were not the product of good faith;

c) An order finding Defendants' violations of the FLSA, MWHL, and MWPCL were willful;

d) Judgment against Defendants, jointly and severally, and in favor of Plaintiffs equal (i) reimbursement of all deducted, assigned, and/or withheld excessive credit card processing fees, and tip and/or gratuity deductions and/or assignments and (ii) payment of direct wages at the applicable minimum wage rate for all non-overtime hours worked and at the required time-and-one-half rate for all overtime hours worked during the relevant period.

e) Judgment against Defendants, jointly and severally, and in favor of Plaintiffs in the full amount of all available liquidated damages and penalties as provided under the FLSA, MWHL, and MWPCL;

f) Judgment against Defendants, jointly and severally, in the amount of all costs and attorneys' fees incurred in prosecuting Plaintiffs claims, to be sought by post-judgment petition; and

g) Such further relief as the Court deems just and equitable.

Dated this 8th day of March 2023         Respectfully submitted,

ZIPIN, AMSTER & GREENBERG, LLC

__/s/ Gregg C. Greenberg_____
Gregg C. Greenberg, Esq.
Maryland Federal Bar No. 17291
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone: 301-587-9373
Fax: 240-839-9142
Email: ggreenberg@zagfirm.com

*Counsel for Plaintiffs*